**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| SALVADOR ALCANTAR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-299-PRC |
| | ) | |
| JEFF BRIDEGROOM and | ) | |
| CAROL BRIDEGROOM, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [DE 15], filed by Defendants Jeff

Bridegroom and Carol Bridegroom (collectively "Defendants") on December 5, 2007.  As set forth

in this Order, the Court treats the Motion to Dismiss as a Motion for Summary Judgment and grants

the Motion for Summary Judgment on Plaintiff's Complaint but denies the Motion for Summary

Judgment on Defendants' Counterclaim.

**PROCEDURAL BACKGROUND**

Plaintiff Salvador Alcantar filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") against Defendants.  On July 18, 2007, the EEOC issued a

Notice of Rights, closing the file on Plaintiff's charge on the basis that the EEOC was unable to

conclude that the information it obtained established a violation of Title VII.

On September 4, 2007, Plaintiff filed a timely *pro se* Complaint under 42 U.S.C. § 1983

against Defendants in this Court.  On September 28, 2007, Plaintiff filed a *pro se* Amended

Complaint under 42 U.S.C. § 1983, alleging that Defendants acted against him with "malice and

reckless indifference" under Title VII of the Civil Rights Act because he is Mexican-American and

because Defendants treated him differently than Defendants' white employees with respect to

1

working overtime, taking time off, safety bonuses, wearing steel toe boots, unpaid vacation, and being suspended for alcohol use.

On December 5, 2007, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12 (b)(6), a Brief in Support, and accompanying exhibits.  In the motion, Defendants assert that, because they have filed affidavits and other documentation in support, the 12(b)(6) motion "is to be treated as a motion for summary judgment."  Def. Br., p. 1. Accordingly, Defendants served Plaintiff with a proper Notice to Pro Se Litigant, informing Plaintiff that Defendants had filed a Motion for Summary Judgment and of Plaintiff's burden in responding to the motion.

Defendants also filed an Answer to the Amended Complaint and a Counterclaim on December 5, 2007.  The Counterclaim alleges that Defendants are entitled to recover attorney fees incurred in defending this case pursuant to 42 U.S.C. § 2000e-5(k) on the basis that Plaintiff's Complaint is frivolous, unreasonable, and without foundation.

On December 28, 2007, Plaintiff filed a Response to Motion to Dismiss, with accompanying exhibits.  Plaintiff also filed a copy of a discovery request served on Defendants that same day (Plaintiff's discovery request was entitled "Motion for Discovery.").

On January 8, 2008, Defendants filed a Reply Brief in Support of Their Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants also filed a Motion to Stay Discovery on January 8, 2008.  Plaintiff did not file a response, and the Court granted the Motion to Stay Discovery on February 1, 2008.

On January 15, 2008, without leave of Court, Plaintiff filed a "Supplemental Response to Plaintiff [sic] Motion to Dismissal" with accompanying exhibits.  In turn, Defendants filed a

"Defendants' Reply to Plaintiff's Supplemental Response to Plaintiff [sic] Motion to Dismissal" on January 17, 2008.  Finally, on January 23, 2008, Plaintiff filed a second supplemental response entitled "Plaintiff, Reply to Defendant's Motion to Dismissal of Supplemental Response."

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## LEGAL STANDARD

### A.  Motion to Dismiss and Rule 12(d)

Defendants filed the instant motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  However, because Defendants also filed affidavits and documentation in support of the motion, Defendants assumed that the motion to dismiss would be converted into a motion for summary judgment.  As a result, Defendants treated the 12(b)(6) motion as a motion for summary judgment under Federal Rule of Civil Procedure 56 and complied with all of the requirements for the filing of a motion for summary judgment under Rule 56 and Local Rule 56.1, including filing a Statement of Material Facts and serving the *pro se* Plaintiff with a Notice to Pro Se Litigant.[1]

---

[1] Although true that a motion to dismiss may be converted into a motion for summary judgment at a *court*'s discretion if materials outside the pleadings are presented, given that Defendants in this case in fact seek resolution of the case on the merits, submitted materials outside of the complaint, and complied with all of the requirements for a motion for summary judgment, it is unclear why Defendants did not file a motion for summary judgment in the first instance.  Federal Rule of Civil Procedure 56 provides that a party claiming relief under Rule 56 may file the motion any time after either "20 days have passed from commencement of the action" or "the opposing party serves a motion for summary judgment."  Plaintiff filed the instant cause of action on September 4, 2007, and Defendants filed the instant dispositive motion on December 5, 2007.

Federal Rule of Civil Procedure 12(d) provides that a motion to dismiss pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment when "matters outside the pleadings are presented to and *not excluded by the court*." Fed. R. Civ. P. 12(d) (emphasis added). Therefore, the decision whether to convert a motion to dismiss into a motion for summary judgment is left to the discretion of the court. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). In this case, the Court, in its discretion, will consider the materials outside the pleadings presented by Defendants in support of their motion and, thus, treats Defendants' "Motion to Dismiss" as a "Motion for Summary Judgment" pursuant to Rule 12(d).

Rule 12(d) further provides that '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*; *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002). The Court finds that Plaintiff has had a reasonable opportunity to respond to the motion and present materials. In filing the instant motion, Defendants served Plaintiff with a satisfactory Notice to Pro Se Plaintiff in compliance with Local Rule 56.1(e), explaining Plaintiff's evidentiary burden in responding to a motion for summary judgment. Subsequently, Plaintiff filed a timely response to Defendant's Motion to Dismiss along with supporting evidence and later filed two supplemental response briefs with additional supporting evidence. Although Plaintiff sought some written discovery from Defendants at the time of filing his response to the Motion to Dismiss, Plaintiff did not respond to Defendants' Motion to Stay Discovery, which the Court subsequently granted. Similarly, Plaintiff has made no argument to the Court for further discovery as required by Federal Rule of Civil Procedure 56(f).

## B.  Motion for Summary Judgment

Treating Defendants' Motion to Dismiss as a Motion for Summary Judgment, the Court applies the standard of review for a motion for summary judgment under Rule 56 and Local Rule 56.1.

### 1.  Federal Rule of Civil Procedure 56

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate– in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.   In other words, the record must reveal that no reasonable jury could find for the non-moving party."  *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party may discharge its "initial responsibility" by simply "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case."  *Id.* at

325.  When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1526 (7th Cir. 1990).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) provides that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 447 U.S. at 249-50; *Doe*, 42 F.3d at 443.

No heightened standard of summary judgment exists in employment discrimination cases nor is there a separate rule of civil procedure governing summary judgment in employment cases.

6

*Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility are critical issues, frequently found in employment cases, that are genuinely contestable and not appropriate for a court to decide on summary judgment. *Id*. Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

*2. Local Rule 56.1*

As required by Local Rule 56.1(e), Defendants notified Plaintiff of the requirements of Local Rule 56.1 in their Notice to *Pro Se* Party:

> Any factual assertion in the affidavits will be accepted by the court as being true unless you submit your own affidavits or other documentary evidence contradicting the assertion.
>      Your failure to respond in that way would be the equivalent of failing to present any evidence in your favor at a trial. . . .
>      . . . .
>      Under Rule 56 of the Federal Rules of Civil Procedure, you have a right to respond to our motion and accompanying sworn material by filing your own affidavit or other sworn responses. . . .
>      If you do not respond to the motion with your own affidavits to dispute the facts established by us, a summary judgment may be entered against you if, on the basis of the facts established by us, we are entitled to judgment as a matter of law. Unless you respond to this motion with sworn statements which contradict important facts claimed by us in our sworn materials, the court will accept our uncontested facts as true. . . .
>      In the event you elect to respond to our motion, your response must include or be supported by sworn statements or other responsive materials. You cannot merely rely upon any conflict or inconsistency between the contents of the complaint and the affidavit(s) or other sworn materials filed in support of our motion. . . . .

Def. Notice to Pro Se Pl., docket entry 18.

Local Rule 56.1(a) requires that a party opposing a motion for summary judgment submit a response that includes a "Statement of Genuine Issues" setting forth all material facts as to which

a genuine issue exists and which may be litigated.  Local Rule 56.1(a) further provides that the "Statement of Genuine Issues" and the facts stated therein shall set forth all material facts, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence. In the "Statement of Genuine Issues," the nonmoving party is not required "to respond to each and every fact, point by point, [but] it does require that the nonmoving party submit potentially determinative facts and identify factual disputes" that may preclude summary judgment.  *See Fox v. Lear Corp.*, 327 F. Supp. 2d 946, 948 (S.D. Ind. 2004).  Failure to include such crucial facts may be detrimental to the non-movant's case because the Court assumes the facts as claimed and supported by admissible evidence submitted by the moving party, unless they are controverted with supporting evidence by the nonmoving party.  *See* L.R. 56.1(b).

Plaintiff has not provided a Statement of Genuine Issues, and *pro se* litigants are required to strictly comply with procedural rules.  *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (requiring *pro se* plaintiff to strictly comply with Northern District of Illinois Local Rule 56.1); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that pro se litigants must comply with procedural rules).  In this instance, although Plaintiff has not filed a document entitled, "Statement of Genuine Issues," Plaintiff's "Brief in Support to Response Motion to Dismissal" is the functional equivalent in that it identifies alleged genuine issues by contradicting facts asserted by Defendants.  In support of these issues, Plaintiff offers specific evidence in the form of six exhibits.  Notably, Plaintiff does not offer any affidavits.

Therefore, pursuant to Northern District of Indiana Local Rule 56.1, the Court assumes the facts asserted by Defendants and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in Plaintiff's brief filed in opposition

8

to the motion and supported by admissible evidence.  To the extent that allegations in Plaintiff's Amended Complaint, briefs, or other filings with the Court are not supported by admissible evidence, they will not be considered by the Court.

*3. Admissibility of Exhibits*

In their reply brief, Defendants argue without specific analysis that Plaintiff's evidence filed in support of his Response contains inadmissible hearsay and lacks foundation.  Because Defendants did not file a separate Motion to Strike pursuant to Local Rules 56.1(d) and 7.1, the Court declines to rule on Defendants' general argument.  In ruling on this motion, the Court will consider only Plaintiff's admissible evidence when relevant to the issues presented in ruling on the instant motion.

## MATERIAL FACTS

### A.  The Parties

Plaintiff Salvador Alcantar was employed as a straight (non-trailer) truck driver for Calumet Pallet, Inc. ("Calumet Pallet") for approximately nine and a half years.  Plaintiff is of Mexican-American heritage.  Defendants Jeff Bridegroom and Carol Bridegroom own and manage Calumet Pallet.  The Defendants state in their Affidavits that they do not serve in any governmental capacity and that Calumet Pallet does not operate under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.

Calumet Pallet is a private, family-owned business that manufactures and distributes wooden pallets for industrial use and is located in Hammond, Indiana.  Calumet Pallet employs about sixty people, nearly half of whom are Hispanic.  Several Hispanics hold positions as part of the company's management team, including a plant supervisor hired in April 1995, a specialty

production crew leader hired in August 1996, a foreman hired in March 1994, and a Lead Resaw Department Operator hired in October 2003.

## B. Overtime

According to Calumet Pallet records, the only day Plaintiff ever worked a sixteen-hour work day was March 28, 2003. Plaintiff was never forced, required, or threatened into working a sixteen-hour day over fear of losing his job.

## C.  Safety Bonus

Prior to Plaintiff leaving his employment with Calumet Pallet, when a truck driver was involved in an accident involving a Calumet Pallet-owned truck and the truck driver was found to be at least partially at fault, a truck driver's safety bonus could be suspended for a period of time to help the company recoup some of the expenses for repairing the truck. Plaintiff, along with many other drivers at Calumet Pallet, both Hispanic and non-Hispanic, have had their safety bonuses deducted according to this policy. Since Plaintiff left his employment at Calumet Pallet, the safety and attendance bonus program has been abandoned in its entirety.

## D.  Pay Rate

As a straight truck driver, Plaintiff was not paid as much as a trailer truck driver because he did not have the required Class A license. The pay rate for drivers at Calumet Pallet is based on the type of license the driver maintains. While still an employee, Plaintiff was asked if he would be willing to obtain additional licenses to enable him to earn more money and be more valuable to the company, but he declined to do so.

### E.  Safety Boots

Plaintiff alleges, without evidentiary support, that Defendant Carol Bridegroom stepped on his boots to check if they had steel toes and that other people present laughed at him.  In her Affidavit, Carol Bridegroom denies ever standing on Plaintiff's toes or shoes.

### F.  Suspensions

When employees of Calumet Pallet would not call or not show up for work (NC/NS), the employee would receive a warning for a first offense and a possible suspension or termination for future NC/NS's.  Plaintiff, while an employee, was warned several times regarding tardiness.  On August 20, 2002, Plaintiff was suspended for one day for failing to call or show on August 19, 2002.  On August 21, 2002, Plaintiff was again NC/NS, and he was suspended from work for the remainder of the work week.  The suspension was consistent with the company's policies, which applied equally to all employees who were NC/NS.

### G.  November 17, 2006

On November 17, 2006, a Friday, Plaintiff reported to work at approximately 6:00 a.m. Shortly thereafter, Defendant Jeff Bridegroom asked Plaintiff if he had been drinking because he smelled alcohol and noticed Plaintiff's eyes were bloodshot.  Plaintiff responded in the negative and explained that he got soap in his eyes when taking a shower.

After this exchange, Jeff Bridegroom sent Plaintiff to the Hammond Clinic in Munster, Indiana, for an alcohol and drug screen.  Plaintiff reported to the Hammond Clinic around 8:20 a.m., more than two hours after the initial confrontation.  According to Defendant, the Hammond Clinic is about a twenty-minute drive from the company's Hammond facility.  At the Hammond Clinic, the alcohol screening concluded that Plaintiff had a blood alcohol level of .007, which Plaintiff admits.

11

Relying on the United States Department of Transportation Regulations for commercial drivers, specifically 49 C.F.R. § 392.5, which prohibits a driver from using or being under the influence of alcohol while on duty, Defendants issued Plaintiff a written notice of suspension and placed him on probation.  Defendants describe this regulation as part of the Department of Transportation's "zero tolerance regulations."  Def. Br., Exh. A., ¶ 28.  Defendants state that the presence of alcohol in Plaintiff's system prohibited him from driving a truck for Calumet Pallet because of its zero tolerance policy.

On Monday, November 20, 2006, Defendants drafted a Written Notice of Suspension ("Notice"), which was signed by Defendants and Plaintiff.  Defendants believe that the Notice is in accordance with 49 C.F.R. § 392.5.  The Notice recounted the events of November 17, 2006, placed Plaintiff on an indefinite unpaid suspension until such time as Plaintiff completed an approved alcohol treatment program, provided that Plaintiff would be reinstated to active employment status following proof of completion of the program, and set forth the terms of his probationary status following his reinstatement.  Specifically, Plaintiff signed the following paragraph: "I, Sal Alcantar agree with above made statement (regarding suspension and alcohol rehabilitation classes) and agree to follow the rule put in place and I also agree to follow the probationary employment guidelines put in place on my employment status when I return to active duty status as a result of this suspension."  Pl. Br., Exh. G.

Jeff Bridegroom states that, in addition to the statements in the Notice, he made it clear to Plaintiff that he was only being suspended until completion of an approved alcohol treatment program and that once he completed the program, he would be reinstated to active employment

status. Plaintiff has not provided any proof to Defendants or anyone at Calumet Pallet of completion of an alcohol treatment program.

While suspended from Calumet Pallet, Plaintiff filed for and was denied unemployment benefits. Defendants maintained that Plaintiff was never terminated, and Defendants accepted Plaintiff's attempt to collect unemployment benefits as notice of his resignation. Following the denial of unemployment benefits, Plaintiff filed an appeal with the Indiana Department of Workforce Development, which upheld the denial of benefits. During the course of his appeal, Plaintiff had a hearing before an Administrative Law Judge at which both parties were present and testified. According to Defendants, Plaintiff then appealed the decision to the Indiana Unemployment Insurance Review Board, which again upheld the denial of benefits. Defendants state in their Affidavits that Plaintiff is currently attempting to appeal the Review Board's decision to the Indiana Court of Appeals.

Subsequently, Plaintiff filed an EEOC charge against the Defendants. The EEOC dismissed the charge, finding that the information provided by Plaintiff was insufficient to establish a Title VII violation.

## ANALYSIS

In their motion, Defendants seek an entry of judgment in their favor on each of Plaintiff's claims as expressed in his Amended Complaint brought under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, arguing that Plaintiff cannot establish a genuine issue of material fact as to any of his claims. Defendants also seek an award of attorney fees under 42 U.S.C. § 2000e-5(k), which is the sole claim in their Counterclaim. Plaintiff's initial Response asserts that Defendants relied on the incorrect regulatory provisions when suspending his employment, that Defendants and

the federal regulations do not have a zero tolerance alcohol policy, that he lost his safety bonus and attendance bonus for no reason, and that Defendants did not pay him for one week of vacation in 2005. In addition, Plaintiff's first Supplemental Response argues that Defendants and their attorney made false and misleading statements to the EEOC Investigator. The Court will consider each issue in turn.

## A.  Supplemental Briefs

As an initial matter, the Court addresses Plaintiff's supplemental briefs that were filed without leave of Court. After the instant motion was fully briefed with the filing of Defendants' Reply on January 8, 2008, Plaintiff filed a Supplemental Response on January 15, 2008, submitting a copy of his EEOC file, making a new argument based on the EEOC file, asserting a claim under the Equal Pay Act, and alleging an additional incident of discrimination by Carol Bridegroom. Defendants filed a Reply to this Supplemental Response on January 17, 2008, arguing that the Supplemental Response should be disregarded as untimely and improperly filed and that the Supplemental Response fails to designate proper evidence or create a genuine issue of material fact. Plaintiff then filed a second Supplemental Response on January 23, 2008, explaining that his January 17, 2008 Supplemental Response was filed late as the result of delays in receiving a copy of his file from the EEOC; in addition, he made substantive arguments.

As with Defendants' objections to the evidence that Plaintiff submitted with his original Response, Defendants have not filed a separate motion asking the Court to strike the Supplemental Response or the EEOC file in support thereof. Given the *pro se* Plaintiff's explanation for his late filing of the first Supplemental Response and Defendants' substantive response to Plaintiff's arguments in that brief, the Court generally denies Defendants' informal request to disregard the

14

brief and will consider the arguments to the extent they are relevant to the EEOC file, to arguments raised in Plaintiff's original Response, and to the Court's ruling and will consider the evidence to the extent it is relevant and admissible. Therefore, the Court will take into consideration Plaintiff's arguments that Defendants and their counsel made misleading statements to the EEOC.

However, the Court will not consider new arguments in the Supplemental Response that could have been raised by Plaintiff in the initial Response without the benefit of the EEOC file. The Court disregards Plaintiff's unsupported statement in the Supplemental Response that Carol Bridegroom singled him out to pay for his own DOT physical. This allegation was not raised in either Plaintiff's Amended Complaint or his initial Response, the receipt of the EEOC file was not necessary for him to make this argument, and Plaintiff offers no evidence that he was treated differently than any similarly situated employees who were not Hispanic in relation to paying for his DOT physical.

Similarly, Plaintiff asserts for the first time in his Supplemental Response that he was denied equal pay under the Equal Pay Act. This argument is untimely. Moreover, this claim must fail because a race-based claim is not cognizable under the Equal Pay Act, which prohibits sex-based wage discrimination, and, even if the argument were timely, Plaintiff has not alleged any facts to support a claim of wage discrimination based on sex. *See* 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . ."); *see also Snider v. Belvidere Twp.*, 216 F.3d 616, 619 (7th Cir. 2000) ("The Equal Pay Act prohibits sex-based wage discrimination.").

As for Plaintiff's second Supplemental Response, to which Defendants have not filed a reply, to the extent that it presents new arguments not raised in Plaintiff's initial Response or in relation to his EEOC file in his first Supplemental Response, the Court will disregard those arguments as untimely and improperly filed.

### B.  42 U.S.C. § 1983

In their motion, Defendants argue that they are entitled to an entry of judgment as a matter of law on Plaintiff's claims for damages under 42 U.S.C. § 1983 because Defendants were not acting under the color of state law.  Plaintiff has not responded to this argument.

In order to state a claim for relief in an action under § 1983, Plaintiff must show that he was deprived of a Constitutional right and that this deprivation was committed under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  The under-color-of-state-law requirement of § 1983 does not include "merely private conduct, no matter how discriminatory or wrongful." *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kramer*, 334 U.S. 1, 13 (1948))).  Neither Jeff Bridgeroom nor Carol Bridgeroom is a public official, and Calumet Pallet is a privately owned company that does not operate under the color of any state law. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's § 1983 claim.

### C. Title VII

Plaintiff's Amended Complaint alleges that Defendants discriminated against him based on his race (Mexican-American) in violation of Title VII on five bases: (1) forcing him to work sixteen-hour days or lose his job, penalizing him with an "unexcused call off" when he called off work when white drivers were given time off without penalty, and suspending him for calling off when they did not get his message from their unplugged answering machine, (2) taking away his safety and

attendance bonuses without any verbal or written notice as a result of an accident but only yelling

at white drivers, (3) acting against him with malice when Carol Bridegroom stood on his shoe to see

if his new shoes had steel toes and those observing laughed at him, (4) misinterpreting the Federal

Motor Carrier Safety Regulations and thus incorrectly charging him with misconduct, suspending

him, and requiring him to complete a "drug" program, and (5) denying him vacation for a week in

2005 and unemployment compensation as a result of his misconduct.

    In the instant motion, Defendants argue that Plaintiff cannot establish a prima facie case of

discrimination based on race, but that, even if he could, Defendants have articulated a legitimate,

non-discriminatory reason for Plaintiff's termination and Plaintiff cannot demonstrate that the reason

is a pretext for discrimination.

    Title VII prohibits discrimination in employment: "It shall be an unlawful employment

practice for an employer . . . to discharge any individual because of such individual's race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).   To prove a case of discrimination

under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods

of proof. *Atanus v. Perry*, —F.3d—, 2008 WL 696908, at *6 (7th Cir. Mar. 17, 2008) (explaining

the misleading nature of this nomenclature and reexplaining that the direct method may be proven

with either direct or circumstantial evidence and the indirect method proceeds under the burden-

shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)).

    Plaintiff has not offered any direct proof of discrimination, either with direct or

circumstantial evidence.   Although Plaintiff alleges in his Amended Complaint that Carol

Bridegroom stood on his shoes to see if they were steel toed, Carol Bridegroom denies in her sworn

Affidavit that she ever did this and Plaintiff has not offered any admissible evidence, not even his

17

own sworn Affidavit, that it occurred. Notwithstanding Plaintiff's failure to meet his evidentiary burden, this incident without more does not point directly to a discriminatory reason for the alleged action. *See Atanus v. Perry*, —F.3d—, 2008 WL 696908, at *6. Similarly, Plaintiff offers no direct or circumstantial evidence in support of his other allegations of discriminatory conduct such that he cannot proceed under the direct method. For example, there is no direct or circumstantial evidence that points directly to a discriminatory reason for Jeff Bridegroom sending Plaintiff for alcohol testing on November 17, 2007, for allegedly withholding Plaintiff's bonuses, or for allegedly not paying him for a week of vacation in 2005.

Consequently, Plaintiff  must rely on the indirect method of proving discrimination under the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 896-97 (7th Cir. 2003). Under the indirect method, Plaintiff must first establish a prima facie case of race discrimination. To successfully set forth a prima facie case of discrimination on this basis, Plaintiff must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Fane*, 480 F.3d at 538 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

If Plaintiff establishes a prima facie case of race discrimination, the burden of production shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citing *Reeves*, 530 U.S. at 142). Defendants' burden of production is "quite light," *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999), and if Defendants meet

18

their burden, Plaintiff must demonstrate that Defendants' articulated reasons for his termination are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives, *Fane*, 480 F.3d at 538 (citing *Reeves*, 530 U.S. at 143). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

The Court considers whether Plaintiff can meet his burden under the indirect method of proof for each of the adverse employment actions that he alleges.

*1. Suspension for alcohol use*

a. Prima facie case

Both parties agree that Plaintiff meets the first prong of the prima facie case in that he is Hispanic. They also agree that he suffered an adverse employment action under the third prong of the prima facie case when he was suspended on November 20, 2007. However, Defendants argue that Plaintiff cannot show that he was meeting their legitimate performance expectations and that similarly situated employees were treated more favorably.

(1) Legitimate performance expectations

Defendants argue that Plaintiff cannot establish that he was meeting Defendants' legitimate expectations because he came to work with alcohol in his system on November 17, 2006. Plaintiff responds that Defendants did not have a zero tolerance policy because they relied upon the wrong Federal Motor Carrier Safety Regulation governing alcohol use by commercial drivers when they suspended him.

The evidence establishes that Plaintiff came to work on November 17, 2006, under the influence of alcohol, as suspected by Defendant Jeff Bridegroom, and confirmed by a blood alcohol

concentration of .007.  In their Affidavits, Defendants state that their company has a zero tolerance policy for alcohol use and that they follow 49 C.F.R. § 392.5 of the Federal Motor Carrier Safety Regulations as support for that policy.  They further state in their Affidavits that, as a result, the presence of alcohol in Plaintiff's system was a violation of § 392.5 and their company policy and they issued the written notice of suspension and placed him on probation.  In response, Plaintiff has not offered any evidence that Defendants did not actually rely on § 392.5 as a basis for their zero tolerance policy for alcohol use or that they did not in fact have a zero tolerance policy and a requirement of suspension and treatment prior to reinstatement.  Rather, Plaintiff argues that Defendants incorrectly relied on § 392.5 and should have followed 49 U.S.C. § 382.505.

Plaintiff's argument is misplaced.  In the context of determining whether a defendant's proffered legitimate nondiscriminatory reason for the adverse employment action is a pretext for discrimination, the Seventh Circuit has repeatedly held that "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions."  *Brummett v. Sinclair Broadcast Group, Inc.*,  414 F.3d 686, 692 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)).  An employer's explanation can be "foolish or trivial or even baseless" so long as it "honestly believed" the proffered reasons for the adverse employment action. *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005) (*Hartley v. Wisc. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997)).  In this instance on the prima facie case, the question is not whether Defendants were correct in formulating their policy based on § 392.5 but whether Defendants honestly believed that they had a zero tolerance policy that subsequently required suspension and participation in a treatment program.

First, the regulations require mandatory testing of a driver if an employer observes from either appearance or behavior a misuse of alcohol. *See* 49 C.F.R. § 382.307. Jeff Bridegroom sent Plaintiff to get tested pursuant to this section. In establishing their zero tolerance policy, Defendants relied on section 392.5, found within the Part entitled "Driving of Commercial Motor Vehicles," which prohibits the use of alcohol by a driver:

> (a) No driver shall–
> (1) Use alcohol, as defined in § 382.107 of this sub-chapter, or be under the influence of alcohol, within 4 hours before going on duty or operating, or having physical control of, a commercial motor vehicle; or
> (2) Use alcohol, be under the influence of alcohol, or have *any measured alcohol concentration or detected presence of alcohol*, while on duty, or operating, or in physical control of a commercial motor vehicle; or . . . .

49 C.F.R. § 392.5(a). Moreover, § 392.5 prohibits a motor carrier from requiring or permitting a driver to "(1) Violate any provision of paragraph (a) of this section; or (2) Be on duty or operate a commercial motor vehicle if, by the driver's general appearance or conduct or by other substantiating evidence, the driver appears to have used alcohol within the preceding four hours." *Id*. at § 392.5(b). "Any driver who is found to be in violation of the provisions of paragraph (a) or (b) of this section shall be placed out-of-service immediately for a period of 24 hours." *Id*. at § 392.5(c). As a result, Defendants were required to remove Plaintiff from service for a minimum of twenty-four hours, which they did.

The section relied on by Plaintiff, 49 C.F.R. § 382.505, found within the Part entitled "Controlled Substances and Alcohol Use and Testing" provides:

> (a) No driver tested under the provisions of subpart C of this part who is found to have an alcohol concentration of 0.02 or greater but less than 0.04 shall perform or continue to perform safety-sensitive functions for an employer, including driving a commercial vehicle, nor shall an employer permit the driver to perform or continue to perform safety-sensitive functions, until the start of the driver's next regularly

21

scheduled duty period, but not less than 24 hours following administration of the test.

(b) Except as provided in paragraph (a) of this section, no employer shall take action *under this part* against a driver based *solely on his test results* showing an alcohol concentration of less than 0.04. *This does not prohibit an employer with authority independent of this part from taking any action otherwise consistent with the law*.

49 C.F.R. § 382.505.  The same Part provides that the authority of an employer, or the rights of the driver, with respect to the use of alcohol, are not affected, including for testing and rehabilitation, "[e]xcept as expressly provided in this part . . . ."  49 C.F.R. § 382.111.

As noted above, Defendants state in their Affidavits that they have a zero tolerance policy based on § 392.5.  To the extent that Plaintiff is arguing that his additional suspension and the required treatment are in violation of § 382.505(b), it appears that Defendants did not base their decision to suspend him solely on the test results.  As articulated in the Written Notice of Suspension, signed by Plaintiff and Defendants, the basis for Plaintiff's suspension was that Jeff Bridegroom believed Plaintiff smelled of alcohol and observed that Plaintiff's eyes were bloodshot, Plaintiff reported to the Hammond Clinic for the alcohol and drug screen two and a half hours after he was sent when the ride was twenty minutes at the most, and the alcohol screening revealed that Plaintiff was under the influence of alcohol.

More importantly, whether or not § 382.505(b) even prevents Defendants from suspending Plaintiff and requiring him to participate in an alcohol treatment program in addition to removing him from service for twenty-four hours is irrelevant.  Defendants had a policy in place; the Written Notice and Jeff Bridegroom both made clear to Plaintiff that he was suspended only until completion of an approved alcohol treatment program and was not terminated; Defendants state in their Affidavits that other employees have been suspended until completion of such a program and then were reinstated; and Plaintiff has not offered any evidence that the zero tolerance policy, suspension,

22

and required treatment was not Defendants' policy.  Whether or not Defendants' suspension and treatment policy was misguided in relation to the regulations, Plaintiff was not meeting Defendants' legitimate employment expectations at the time he was suspended because he came to work under the influence of alcohol.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (citing *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time . . . .' ")).

Plaintiff also argues, in his response brief, without admissible evidence, that he was sent to the Hammond Clinic prior to it opening at 8:00 a.m. on November 17, 2007.  From this, the Court infers that Plaintiff is arguing he is unfairly suspected of delaying the testing.  Whether the delay in Plaintiff not being tested until 8:20 was a result of Plaintiff's actions or of the clinic not opening until 8:00, the fact remains that more than two hours after Jeff Bridegroom suspected Plaintiff had consumed alcohol prior to arriving at work, there was measurable alcohol in Plaintiff's system, given the reading of .007.  Thus, Plaintiff was in violation of Defendants' policy.  Also, whether or not Plaintiff was responsible for the delay, it appears from the Written Notice that Defendants believed he was and they relied on the delay in the decision to suspend him.  As noted above, the question is not whether Defendants were *correct* that Plaintiff was responsible for the delay in testing but rather that they honestly believed it in making their decision.  *See Culver*, 416 F.3d at 547.

In his Supplemental Response, Plaintiff argues that Defendants and their attorney made false and misleading statements to the EEOC investigator as to Plaintiff's blood alcohol level.  Plaintiff

filed a copy of the EEOC file in support of the Supplemental Response.  Within the EEOC file, Defendants' brief in response to Plaintiff's charge of discrimination with the EEOC properly represents the .007 test result.  There is one handwritten note in the margin of a copy of the federal regulation found within the EEOC file that indicates a level of .07 rather than .007, but it is unclear who handwrote the note.  Regardless, the EEOC's Pre-Determination Interview dated July 13, 2007, accurately notes the result of .007.  Plaintiff has not specifically identified any other misleading statements made to the EEOC by Defendants.  In his second Supplemental Response, Plaintiff refers to Defendants' explanation to the EEOC investigator of their reliance on various regulations in making its decision to suspend Plaintiff as a "smoke screen."  Pl. Second Supp. Resp., p. 2.  Even if there were evidence that this constitutes misrepresentations by Defendants and their attorney, as noted above, whether Defendant relied on the correct regulations is irrelevant to whether Plaintiff was meeting Defendants' legitimate performance expectations.

More importantly, this Court is not bound by the findings of the EEOC because "[w]hen a federal employee files a Title VII suit in federal court, the district court charged with deciding that action is required to perform a *de novo* review of the record, including administrative agency proceedings." *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006) (citing *Chandler v. Roudebush*, 425 U.S. 840, 861 (1976); *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 575 n. 4 (7th Cir.1987)).  As set forth above, the Court has relied on the correct test result of .007 in its determination that Plaintiff was not meeting his employer's legitimate performance expectations and thus any misrepresentations to the EEOC have not affected this Court's decision.

Plaintiff also argues, again without evidentiary support, that Defendants never issued an alcohol policy to the employees of Calumet Pallet as required by 49 C.F.R. § 382.601.  Whether or

not Defendants issued a policy to their employees does not change the fact that Plaintiff did not meet Defendants' legitimate employment expectations when he arrived at work under the influence of alcohol.

Plaintiff has failed to meet his burden of establishing that he was meeting Defendants' legitimate performance expectations because test results substantiated Jeff Bridegroom's suspicion that he had alcohol in his system at the time he reported to work and Defendants had a zero tolerance policy.

(2)  Similarly situated employees

Defendants also argue that Plaintiff cannot make out a prima facie case of discrimination because he has not demonstrated that he was treated differently than a similarly situated employee not of his protected group in relation to his suspension for alcohol use.  A similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects.'"  *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005) (citations omitted).  To evaluate whether two employees are directly comparable, a court considers all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." *Id*. at 693 (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)); *see also Fane*, 480 F.3d at 540.

In his Amended Complaint and briefs, Plaintiff does not identify any other similarly situated employee who received more favorable treatment under similar circumstances.  In fact, he does not

even allege in his Amended Compliant that non-Hispanics were treated more favorably in relation to Defendants' alcohol policy.  His unsupported allegations that Defendants took away his safety and attendance bonus after an accident but did not financially penalize a non-Hispanic driver for an accident and that Defendants treated Caucasian drivers more favorably in relation to time off do not constitute similar circumstances for the purposes of his alcohol-related discipline.  Accordingly, Plaintiff has failed to establish this prong of his prima facie case as well.

b.  Legitimate, non-discriminatory reason and pretext

Even if Plaintiff could establish a prima facie case of race discrimination based on his suspension, Defendants have proffered a legitimate, noninvidious reason for the employment decision.  As discussed above, Defendants have a zero tolerance alcohol policy, testing from the Hammond Clinic confirmed Jeff Bridegroom's suspicion that Plaintiff came to work under the influence of alcohol, and Defendants issued the Written Notice of Suspension pursuant to their policy.  Notably, the Written Notice provided for Plaintiff's reinstatement upon completion of the treatment program, but, as of the date of Defendants' briefs in this case, Plaintiff had not completed a treatment program.  In addition, Plaintiff sought unemployment benefits, which Defendants interpreted as Plaintiff's resignation.

Thus, the burden shifts to Plaintiff to prove that this articulated reason is a pretext for discrimination.  *See Perez v. Illinois*, 488 F.3d 773, 777-78 (7th Cir. 2007).  "A pretext . . . is a deliberate falsehood."  *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (citing *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("[P]retext means a dishonest explanation, a lie rather than an oddity or an error.")).  "The focus of a pretext inquiry is whether the employer's stated

reason was honest, not whether it was accurate, wise or well-considered." *Id.* (citing *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)).  As noted earlier, the courts do not "sit as a super personnel department to review an employer's business decisions." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000).  "[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee.  Rather, the only question is whether the employer's proffered reason was pretextual . . . , meaning that it was a lie." *Gates*, 513 F.3d at (7th Cir. 2008) (citing *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir.2005); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)).

Plaintiff offers no evidence to demonstrate that Defendants' proffered reason for suspending Plaintiff is a fabrication.  Plaintiff has not brought forth any evidence to cast doubt on the veracity of Defendants' dissatisfaction with the circumstances surrounding Plaintiff's alcohol test, Defendants' reliance on certain USDOT regulations, Defendants' own alcohol policy, and Defendants' dissatisfaction with Plaintiff reporting to the Hammond Clinic late for the testing. Accordingly, summary judgment in favor of Defendants on Plaintiff's Title VII claim based on his alcohol-related suspension is appropriate.

*2.  Other claims of discrimination*

In addition to his claim of discrimination based on his suspension for alcohol use, Plaintiff alleges in his Complaint that he was treated differently than whites in relation to working sixteen-hour days, taking time off, and to the suspension of safety and attendance bonuses.  He also alleges that he was denied a week of vacation in 2005 without alleging that he was treated differently than non-Hispanic workers.  The Court addresses each in turn, finding for each that Plaintiff has either

not offered any admissible evidence in support of the allegations or that he cannot establish a prima facie case of discrimination.

a.  Sixteen-hour days

First, as to the sixteen-hour work days, Plaintiff alleges in his Amended Complaint that he was required to work sixteen hour days or lose his job.  In support of their motion, Defendants executed Affidavits in which they state that their records demonstrate that Plaintiff has worked one sixteen-hour day and that Plaintiff has never been threatened to work a sixteen-hour day or lose his job.  In response, Plaintiff offered no evidence or argument.  Accordingly, summary judgment in favor of Defendants on this claim of discrimination is appropriate.

b.  Time off

Second, Plaintiff alleges in his Amended Complaint that points would get taken off his time card as an unexcused call off when he called off work but that Caucasian drivers were given time off with no problem.  In support of their motion, Defendants offered their sworn Affidavits explaining the company's NC/NS policy and that it was applied equally to all employees, including Plaintiff.  The only evidence submitted by Plaintiff related to taking time off is a few statements he made during the August 8, 2007 hearing before the ALJ of the Indiana Department of Workforce Development Appellate Section.  Plaintiff talks about various times he called off work, but at no time did he offer any examples of being treated differently than Caucasian workers in relation to time off.  Accordingly, summary judgment in favor of Defendants on this claim of discrimination is appropriate.

c.  Safety bonus

Third, Plaintiff alleges in his Amended Complaint that he was treated differently than Caucasian drivers when he had an accident, alleging that his safety and attendance bonuses had been taken away while white drivers were only verbally reprimanded.  First, he has not demonstrated with admissible evidence that his safety and/or attendance bonuses were revoked.  In addition, neither his Amended Complaint nor any of his briefs identify any similarly situated individuals.  However, in the transcript of the August 2007 hearing before the ALJ, Plaintiff identified a Caucasian driver named Don Cummings whom Plaintiff stated had an accident and was not disciplined.  At that hearing, Plaintiff testified that Cummings tore up a company trailer inside the company yard when making a u-turn, which Plaintiff estimated cost thousands of dollars, and that they "slap[ped] him on his hand and told him not to do it."  Pl. Br., Exh. E, p. 9.  Plaintiff then testified about an accident he had that he claimed was not his fault in which he "caved in the rear end of the car and put a little dent on that tire."  *Id.*  He explained that he did not get a ticket, a verbal warning, or a written warning but that his attendance and safety bonuses were taken away for nine months.[2]  Other than his own testimony at that hearing, the equivalent of a sworn Affidavit, Plaintiff has not offered any evidence in support of these incidents.  In addition, Plaintiff has not given a time frame for his accident and the suspension of his bonuses; therefore, it is not clear that this claim is timely.

Even if the Court assumes that Plaintiff's safety bonus was suspended and overlooking the lack of admissible evidence regarding the accidents, Plaintiff has not established that he and Cummings were similarly situated.  First, it is true that both men were drivers for Calumet Pallet, and it appears that both men were subject to the same CDL rules and Calumet Pallet policies and

---

[2] He mentioned what appears to be a separate incident in 2006 in which he broke off a mirror on one of the trucks but he does not indicate that he received any punishment other than Carol Bridegroom expressing anger.

that both reported to Defendants.  There is no evidence in the record as to whether the men had comparable experience, education, or licenses.  More importantly, Plaintiff has not established that the circumstances of the accidents they were involved in were sufficiently similar.  In the same administrative hearing, when questioned by his attorney, Jeff Bridegroom explained the difference between the Plaintiff's and Cummings' accidents.  First, he explained that when Cummings totaled the truck as asserted by Plaintiff, Cummings was traveling on the expressway and that the Illinois State Police determined that a wind sheer tipped over the truck.  Defendants did not discipline Cummings for the incident.  Jeff Bridegroom further testified that when a truck driver was involved in an accident and was partially at fault, the safety bonus was deducted for a period of time. Defendants agree that, in keeping with this policy, Plaintiff lost his safety bonus because he was in an accident that was his fault.  Plaintiff had an opportunity to cross-examine Jeff Bridegroom but he did not challenge the distinctions made between his accident and that of Cummings.  In their Affidavits, Defendants state that both Hispanics and non-Hispanics had lost their safety bonuses in accordance with the policy.  Although both Plaintiff and Don Cummings were in accidents, Plaintiff was determined to be partially at fault while Cummings was not, and as a result, the safety bonus suspension policy was applied equally, resulting in different outcomes.

Therefore, Plaintiff has not established a prima facie case of discrimination based on the suspension of his safety bonus.  Even if Plaintiff could prove a prima facie case, Defendants offered a legitimate nondiscriminatory reason for the suspension of his safety bonus, and Plaintiff has not offered evidence that this reason was a pretext.

d. 2005 vacation

Finally, Plaintiff alleges in his Amended Complaint and argues in his initial Response to the instant motion that Calumet Pallet did not pay him for one week of vacation in 2005. In his testimony before the ALJ, Plaintiff provides details of a situation in which Jeff Bridegroom did not let him take vacation because the company was short of drivers. He offers no additional evidence regarding this incident. More importantly, Plaintiff does not even argue, much less present evidence to prove, that he was treated differently than white workers when Bridegroom required him to work. Accordingly, summary judgment in favor of Defendants is appropriate on Plaintiff's claim of unpaid vacation under Title VII.

## C. Defendants' Counterclaim for Attorney Fees

In their Counterclaim, Defendants seek attorney fees pursuant to 42 U.S.C. § 2000e-5(k), and in the instant motion, Defendants seek an order granting them attorney fees under this provision of Title VII. Plaintiff does not address this argument in any of his response briefs.

Title VII grants a district court the discretion to make an award of reasonable attorney fees to a prevailing party. *See* 42 U.S.C. § 2000e-5(k). A prevailing defendant is entitled to an award of attorney fees when the plaintiff's cause of action is shown to have been frivolous, unreasonable, or without foundation, even when not brought in subjective bad faith. *Christianburg Garment Co., v. EEOC*, 434 U.S. 412, 421-22 (1978); *Monroe v. Children's Home Ass'n*, 128 F.3d 591, 594 (7th Cir. 1997). A showing by a defendant of subjective bad faith on the part of a plaintiff is not necessary to be awarded fees. *See Christianburg*, 434 U.S. at 421.

In the instant case, Defendants have been successful in demonstrating that there is no genuine issue of material fact precluding entry of judgment in their favor on Plaintiff's Amended Complaint.

However, Defendants have nevertheless failed to establish that Plaintiff's claims are frivolous, unreasonable, or without foundation.  Defendants' only argument is the faulty syllogism that (a) because the EEOC was unable to conclude that the information obtained by the EEOC in the course of investigating the allegations in Plaintiff's EEOC charge establishes a violation of Title VII and (b) because Plaintiff's federal cause of action under Title VII restates the same allegations from his EEOC charge, (c) Plaintiff's lawsuit cannot establish a violation of Title VII and thus is frivolous. Although true that Plaintiff's charge was dismissed by the EEOC, a dismissal by the EEOC has no effect on Plaintiff's right to bring suit on his own behalf.  *See* 42 U.S.C. § 2000e-5(f)(1).[3]  Given Defendants' failure to offer anything other than this logic to show that Plaintiffs' claims are frivolous, Plaintiff's pro se status and lack of legal training, and the fact that this case has been resolved without protracted litigation, the Court declines to award Defendants the requested attorney fees.  Accordingly, the Court denies the motion as to the request for attorney fees and, given that the only claim in Defendants' Counterclaim is one for attorney fees under § 2000e-5(k), judgment in favor of Plaintiff on Defendants' Counterclaim is appropriate.

## CONCLUSION

Based on the foregoing, the Court now **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss [DE 15], which the Court has treated as a motion for summary judgment, granting summary judgment in favor of Defendants on Plaintiff's Complaint and denying summary judgment in favor of Defendants on their Counterclaim.  The Court directs the Clerk of Court to enter judgment in favor of Defendants on Plaintiff's Amended Complaint and to enter judgment in favor of Plaintiff on Defendants' Counterclaim.

---

[3] The EEOC Dismissal and Notice of Rights itself provides that the EEOC's finding "does not certify that the respondent is in compliance with the statutes."  Def. Br., Exh. C.

So ORDERED this 16th day of May, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record